UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MELISSA FINAZZO,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

Case No.: C08-806 CRD

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

    Plaintiff Melissa Finazzo appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. FACTS AND PROCEDURAL HISTORY

    Plaintiff is a fifty-three-year-old woman, forty-four years old at the alleged disability onset date. She has a high school education, has completed some community college coursework, and has work experience as a collections agent and as a medical biller.

    Plaintiff applied for DIB in May 2004, alleging disability since February 2000. Her claim was denied initially and upon reconsideration, and she timely requested an ALJ hearing. On June 13, 2007, a *de novo* hearing was held before ALJ Schellentrager. The ALJ heard testimony from a vocational expert and from Plaintiff, who was represented by counsel, James

ORDER - 1

W. Armstrong, Esq. Administrative Record ("AR") at 26-65. The ALJ rendered an unfavorable decision on September 18, 2007. Plaintiff requested Appeals Council review; review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On May 23, 2008, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. THE DISABILITY EVALUATION

As the claimant, Ms. Finazzo bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are

of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. AR 13, Finding 2. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found Plaintiff has the severe impairments of hepatitis C with associated liver disorder, depression, anxiety, and substance abuse. AR 13, Finding 3. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*. Here, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. AR 17, Finding 4.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[1]Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case found Plaintiff has "the residual functional capacity to perform the full range of light [work] that requires only limited public contact." AR 18, Finding 5.

The ALJ next found that Plaintiff is capable of performing her past relevant work as a medical biller. AR 24, Finding 6. If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. In this case, the ALJ found that Plaintiff could perform her past relevant work as a biller and therefore concluded she was not disabled as defined in the SSA. AR 24.

## V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1. Did the ALJ err in assessing Plaintiff's residual functional capacity?
2. Did the ALJ err in finding Plaintiff could perform her past work?

## VI. DISCUSSION

*A.  The ALJ did not err in assessing Plaintiff's residual functional capacity.*

The ALJ found that Plaintiff has the RFC to perform light work that involves limited public contact. AR 22. Plaintiff argues that, "the ALJ erred by failing to follow the mandatory requirements of Social Security Regulation ("SSR") 96-8p when formulating Plaintiff's RFC." Dkt. 8 at 13. Specifically, Plaintiff asserts that the ALJ erred in "fail[ing] to assess whether the claimant is capable of working on a 'regular and continuing basis,' even though she suffers from fatigue due to hepatitis C and depression and underwent months of Interferon treatment which also causes fatigue and depression." Dkt. 8 at 14. Plaintiff argues the ALJ's finding is based on erroneously rejecting or not considering certain medical opinions that she has fatigue and other impairments.

State Agency Medical Consultants

Plaintiff argues that several "moderate limitations" found by nonexamining state agency physicians should have been considered by the ALJ, and that "such findings negate her ability to perform work for 40 hours a week, week after week…" on a continuing basis. Dkt. 8 at 16. Defendant concedes that the ALJ did not specifically include several moderate limitations opined, including the ability to complete a normal workweek without interruptions, and the ability to maintain concentration for extended periods, but asserts the omission is harmless because the reviewing physicians did not believe the moderate limitations would result in any concrete restrictions on Plaintiff's RFC. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id*. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (internal citations omitted). The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor, may be upheld. *Morgan v. Commissioner*, 169 F.3d 595, 602 (9th Cir. 1999), *citing Magallanes*, 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

The ALJ did not reject the state agency findings but instead gave them significant weight, explaining:

> Regarding the claimant's mental residual functional capacity, State agency consultants reviewed the record in connection with the initial and reconsideration determinations. The first determination found that as evidenced by her daily activities and mental status examination findings, she was capable of simple and some complex tasks and would do best with limited public contact due to her symptoms (Ex. 2F). Another review in October 2004 found the claimant capable of following simple instructions all of the time and complex instructions most of the time and that her concentration would result in only negligible effects on her ability to perform those tasks (Ex. 5F). As the State agency opinion is supported

by the record, I have relied significantly on it in making my assessment that the claimant is capable of performing work that involves limited public contact, with no other mental limitations.

AR 22. The state agency 2001 assessment the ALJ refers to is a standardized RFC form with boxes checked for "moderately limited" in the categories Plaintiff alleges; the form also provides the following narrative comments: [2]

> 45 [year old female] with good work [history] until on the job injury in 11/09/99. Currently [claimant] alleges depression, some anxiety, hepatitis C and Riboviran [treatment] yet continues to drink alcohol (3 beers the day before the [consulting examination]). Some of [claimant's] depressive [symptoms] could be due to hepatitis C [treatment] plus cont[inues] to drink. However, it is not possible to sort these out so [mental residual functional capacity] is for reported level of [symptoms].
> (A & B) [Claimant] is able to garden, sew, read, pick up household, and shop. [mental status exam] is generally [within normal limits]. She [complains of decreased] concentration. She can carry out simple and some complex tasks with adequate attention. She [complains of] fatigue but this is more related to her physical problems than psychological given her level of interest in activities and social involvement.
> (C) [Claimant] will do best with limited public contact secondary to her depression and anxiety [symptoms]. She relates well socially in general—talks to friends on the phone, shops, and maintains family relationships.
> (D) [Claimant will do best with slow paced changes at this time. She can avoid regular hazards, use transportation and plan. Though she cont[inues] to drink, showing poor personal judgment, it has not precluded work in the past.

AR 264. The state agency 2004 assessment form likewise has boxes checked for several "moderately limited" categories but concludes:

> A. Based on [claimant's] report and her performance on MSE, she is capable of following simple instructions all of the time and complex instructions most of the time.
> B. Claimant's concentration is somewhat variable and when she is focused on her physical condition likely interferes with concentration. At the same time, it is noted that she is able to read for extended periods. Claimant appears convinced that she is unable to work currently and this conviction is likely to increase her inability to concentrate because she will focus on any difficulties she might be having. With work activities that are repetitive and not overly mentally challenging, any effect would be negligible.
> C. No limitations noted and 3rd party [activities of daily living] indicate she engages with friends and has relatively frequent telephone conversations with her friends.

---

[2] The Court has provided its best interpretation of the doctor's shorthand.

> D. No limitations noted.
> Claimant appears capable of [substantial gainful activity].

AR 281.

The ALJ also noted that, "[t]he State agency opinion is consistent with the opinion of consultative examiner Dr. Quint, who opined that the claimant was capable of work activities consistent with the light physical exertional level with no manipulative and no environmental restrictions." AR 23. In concluding that Plaintiff is capable of performing light work, the ALJ also explained that, "…the claimant's activities…tend to indicate that she is perhaps capable of more than light work, but find that that the State agency opinion adequately addresses any limitations resulting from the claimant's physical impairments." *Id.* The ALJ's discussion of the two opinions is based on substantial evidence in the record; thus, the Court finds that although the ALJ did not specifically discuss the "moderate" opinions checked on the forms, the reasons given by the ALJ for giving great weight to the state agency physicians is supported by substantial evidence in the administrative record. As such, the ALJ did not err.

### Dr. Washburn, Ph.D.

Plaintiff argues that the ALJ improperly discounted the findings of Dr. Washburn regarding her depression symptoms. Dr. Washburn is a consulting physician who examined Plaintiff on one occasion in 2004; his opinions are contradicted by treating physician, Dr. Nader (*see* AR 373, 385-87, 486, 492-94, 498); therefore, the ALJ is required to provide specific and legitimate reasons for rejecting Dr. Washburn's opinions. The ALJ provided the following detailed explanation for giving Dr. Washburn's opinion reduced weight:

> I also considered the opinion of Dr. Washburn, who found the claimant's cognitive functioning to be average but stated she could tend to be distracted. He assigned a GAF score of 55, indicating only moderate symptoms or moderate difficulty in social, occupational, or school functioning, but opined that the claimant did not appear to have the emotional stability needed to cope with the normal stress of full-time, gainful employment (Ex. 16F/5). Dr. Washburn's opinion is not persuasive. It is inconsistent with records from treating physicians, such as Dr. Nader, which repeatedly note that the claimant denied depressive symptoms. In addition, Dr. Washburn's conclusory opinion that the claimant could not tolerate work is not consistent with his evaluation that contained essentially normal findings on mental status examination and his GAF score indicating only moderate limitations. Dr. Washburn stated that his background

> information consisted of the claimant's self-report (Ex. 16F/1); which is subject to the credibility concerns addressed above.

AR 22-23. The Court finds the reasons the ALJ provided for discounting or rejecting Dr. Washburn's opinion, specific and legitimate and based on accurate, substantial evidence in the administrative record before this Court. No other evidence cited by Plaintiff adequately supports finding otherwise or assigning error to the ALJ's decision.

With respect to fatigue symptoms, Plaintiff argues that Dr. Nader and Dr. Jangala both noted she had some fatigue. The ALJ gave little weight to Dr. Nader's opinion, noting, "Dr. Nader did not perform a functional assessment of the claimant's physical capacities. His treatment notes are inconsistent with his cursory statement of disability; rather, they show that the claimant tolerated Interferon well with little side effects that resolved at the conclusion of treatment." AR 23. The Court therefore finds the ALJ did not err in discounting Dr. Nader's opinion because specific and legitimate reasons were given for rejecting them. Dr. Jangala noted in a January 2005 report that Plaintiff complained of fatigue and depression and that she felt run-down and depressed because of stressors in her life. AR 426. Dr. Jangala's objective findings stated that Plaintiff "appear[ed] fatigued but not acutely ill" which he opined was due to "a combination of hepatitis C as well as stress" and recommended she take omega-3 fatty acids to help with the fatigue. *Id.* Dr. Jangala did not find the fatigue to be severe and opined the dietary supplements would help improve her energy level. Although the ALJ did not discuss Dr. Jangala's notes regarding fatigue, the Court finds the error, if any, is harmless because the opinion regards fatigue as relatively minor and treatable and therefore would not have changed the ALJ's assessment of Plaintiff's RFC.

<u>Regular and Continuing Basis</u>

Plaintiff argues that the ALJ erred by failing to assess her RFC on a "regular and continuing basis" which she asserts is contrary to SSR 96-8p[3] and *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998). Dkt. 8 at 13-16. In *Reddick*, the Court found error where the ALJ did not

---

[3] SSR 96-8p provides in relevant part, "ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

account for Plaintiff's chronic fatigue with respect to her ability to undertake sustained work. *Id*. at 724. *Reddick* is distinguishable because the court found error in the ALJ's failure to address whether the plaintiff's diagnosed Chronic Fatigue Syndrome ("CFS") would have an effect on the ability to work on a regular and continuing basis. Here, Plaintiff has not been diagnosed with CFS, although as discussed above, Dr. Nader and Dr. Jangala noted some fatigue symptoms. Plaintiff argues that "the ALJ totally failed to assess whether the claimant is capable of working on a 'regular and continuing basis' even though she suffers from fatigue due to hepatitis C and depression and underwent months of Interferon treatment which also causes fatigue and depression." Dkt. 8 at 14. The Court does not agree. As discussed above, the ALJ did not err in evaluating the medical and psychological evidence that Plaintiff disputes. The ALJ gave greater weight to the conclusions of the state agency physicians who did not observe a mental impairment that would pose a significant obstacle to work adaptation. *See* AR 264, 281. Furthermore, Plaintiff's argument that the residual functional capacity determination did not consider whether she could work on a "regular and continuing basis" is spurious. It is axiomatic that the RFC determination is inherently an assessment of a claimant's ability to perform ongoing work. *See* 20 C.F.R. 404.1545(a)(4) ("When we assess your residual functional capacity, we will consider your ability to meet the physical, mental, sensory, and other requirements of work, as described in paragraphs (b), (c), and (d) of this section."). The ALJ found that Plaintiff has the ability to perform light work, specifically, work at her former job as a medical biller as she "actually and generally performed" the job. AR 24. Such finding is an assessment of Plaintiff's ability to perform ongoing work. There is no requirement that the ALJ use the specific language of "regular and continuing basis." Thus, the Court finds the ALJ did not err in this regard.

/
/
/
/
/

*B. The ALJ did not err in finding Plaintiff could perform her past work.*

Plaintiff argues that the ALJ erred at step four by finding that she is capable of performing her past work as a medical biller. Plaintiff assigns error arguing the ALJ based the finding on erroneous RFC findings and failed to perform a proper analysis of her past work.[4]

Plaintiff argues the RFC determination was made in error because it did not include the full extent of her limitations including fatigue with depression and anxiety. However, as discussed above, the Court finds the RFC determination is based on substantial evidence and is not in error. Where the ALJ's findings are based on substantial evidence in the record, the decision to deny benefits will not be reversed. *Bayliss*, 427 F.3d at 1214.

Plaintiff asserts the ALJ failed to conduct a proper functional analysis of her past relevant work as required by Social Security Regulation 82-62 based on questioning the vocational expert at the hearing. Social Security Regulation 82-62 provides that:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>     1. A finding of fact as to the individual's RFC.
>     2. A finding of fact as to the physical and mental demands of the past job/occupation.
>     3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62.

At the hearing, the ALJ questioned Plaintiff and a vocational expert regarding the demands and duties of her past work as a medical biller and a collections agent. *See* AR 55-59. Based thereon, the ALJ concluded:

> The claimant has past work as a medical biller, classified by the Dictionary of Occupational Titles as sedentary, semiskilled work, and as a collections agent, defined as sedentary, skilled work. The claimant stated that her work entailed performing data entry, completing Health Care Financing Authority claims, and

---

[4] Plaintiff's Opening Brief asserts the ALJ erred in presenting hypothetical questions to the vocational expert; however, in her Reply brief, Plaintiff concedes there was no hypothetical question, and argues instead that the ALJ erred in questioning the expert about certain limitations. Dkt. 17 at 5, footnote 6. Therefore, the Court does not address Plaintiff's original argument regarding any hypothetical question posed to the expert.

ORDER - 10

> serving as an account representative. She indicated that she did not supervise people in that position. The vocational expert testified that the level of public contact in the billing position is minimal as defined in the Dictionary of Occupational Titles. The vocational expert's testimony is consistent with the Dictionary of Occupational Titles pursuant to Social Security Ruling 00-4p.
>
> In comparing the residual functional capacity the claimant had as of the date last insured with the physical and mental demands of this work, I find that the claimant was able to perform it as it was actually and generally performed. The claimant's past relevant work as a medical biller is not precluded by her residual functional capacity for light work involving only limited public contact. I therefore find that the claimant is capable to perform her past relevant work as a medical biller.

AR 24.

Plaintiff argues the ALJ's findings do not meet the requirements of the regulation because they are conclusory and are "not a full investigation of the past work with a comparison to plaintiff's mental and physical abilities." Dkt. 17 at 6. Plaintiff cites Ninth Circuit case law in support of her argument that the ALJ's assessment was overly general and does not sufficiently inquire into the functional requirements of her past work. Plaintiff cites *Silivay v. Apfel*, 143 F.3d 1298 (9th Cir. 1998), for the broad proposition that "reversible error occurs when the requirements of SSR 82-62 are ignored." Dkt. 17 at 6. *Silivay* is a one-paragraph decision that states in its entirety:

> We vacate the findings of the administrative law judge for the misapplication of Social Security Rulings 82-61 and 82-62. *See Henrie v. U.S. Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir.1993). On remand, we direct the administrative law judge to investigate fully the demands of the applicant's past work and compare them to the applicant's residual mental and physical capabilities.

*Silivay*, 143 F.3d at 1298. *Silivay* does not bolster Plaintiff's argument, as the court did not explain the depth of the ALJ's errors, nor specify the errors particular to the two regulations violated. Plaintiff also relies on *Carmickle v. Commissioner*, 533 F.3d 1155 (9th Cir. 2008), arguing that as explained in *Carmickle* at page 1167, the ALJ's classification of her past work was too broad and generic to meet the requirements of SSR 82-62. However, a reading of *Carmickle* one sentence before the paragraph Plaintiff selected to cite, clarifies that the court found error in the ALJ's unexplained and unsupported reliance on the vocational expert's

testimony which failed to specify a Dictionary of Occupational Titles classification for the past work, and instead generically and overbroadly classified the job. Here, Plaintiff alleges no such error, nor does she contest the particular classification of her past work. The ALJ in this case refers to specific Dictionary of Occupational Titles classification numbers and categories for both the past jobs of biller and collections agent, consistent with the vocational expert testimony at the hearing. AR 24, 55-59. The Court finds no error with the ALJ's findings. Pursuant to SSR 82-62, the ALJ made findings of fact, (1) as to Plaintiff's RFC, which the Court finds not in error as discussed above; (2) as to the physical and mental demands of her past work, which the ALJ explained in terms of DOT job number and classification with the further discussion regarding limited public contact; and (3) that Plaintiff's RFC permits a return to her past job as a medical biller. AR 24. Therefore, Court finds there is nothing deficient about the ALJ's functional analysis based on the requirements of the regulations and in light of the case law Plaintiff cites.

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case is DISMISSED.

DATED this 5th day of February, 2009.

/s/ Carolyn R. Dimmick

Carolyn R. Dimmick
United States District Judge

ORDER - 12